Bruce Fein (D.C. Bar No. 446615)
FEIN & DELVALLE PLLC
300 New Jersey Avenue, N.W., Suite 900
Washington, D.C. 20001
Phone:  202-465-8728
Email: bruce@feinpoints.com
Attorney for Plaintiffs

_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J. Sassoon Group, LLC<br>300 New Jersey Avenue, N.W., Suite 900<br>Washington, D.C. 20001, and | Civil Action No. |
| David Sassoon, an individual,<br>Houston, Texas, | |
| Sharon Levy Sassoon, an individual,<br>Athens, Greece, and, | Honorable Judge _____ |
| Bruce Fein, an individual,<br>215 C. Street, S.E., #309<br>Washington, D.C. 20003 | **COMPLAINT AND DEMAND FOR JURY**<br>**TRIAL** |
| Plaintiffs, | |
| v. | |
| Jewish Chronicle Limited, a UK corporation,<br>and Jenni Frazer, an individual, London, UK | |
| Defendants. | |

_____

## COMPLAINT FOR DEFAMATION

Plaintiffs, the J. Sassoon Group, LLC, David Sassoon, Sharon Levy, and Bruce Fein

through their undersigned attorney, brings this Complaint for defamation seeking compensatory

and punitive damages against the Jewish Chronicle and Jenni Frazer and states as follows:

SUBJECT MATTER JURISDICTION

1. This Court possesses subject matter jurisdiction over the Complaint under 28 U.S.C. 1332 (a) (2) and 1367 (a).  The amount in controversy exceeds $75,000 exclusive of interest and costs.

PERSONAL JURISDICTION

2. This Court has personal jurisdiction over Defendants under the D.C. Long Arm Statute, 13-423 because Defendants inflicted tortious injury against Plaintiffs in the District of Columbia and additionally engage in a persistent course of conduct in the District of Columbia within the meaning of subsection (a) (4) by a constant Internet presence.

VENUE

3. Venue is proper in the District of Columbia because Plaintiff Bruce Fein resides there and Plaintiff J. Sassoon Group, LLC's principal place of business is there.

PARTIES

4.  Plaintiff J. Sassoon Group, LLC (JSG) is a Delaware corporation with its principal place of business in the District of Columbia.  It is exclusively funded by the Sassoon Family Continuation Trust (SFCT) and is involved in private equity investment. JSG is owned by David Sassoon, Bruce Fein, and Sharon Levy.   It is not publicly traded.

5. Plaintiff David Sassoon is the sole beneficiary of the SFCT and is Chairman of the Board of JSG.  David Sassoon is a resident of Houston, Texas and is a United States citizen.

6. Plaintiff Sharon Levy is the wife of David Sassoon, Settlor of the SFCT, and Chief Compliance Officer with JSG.  Ms. Levy is a citizen of the UK and Israel and resides in Athens, Greece.

7.  Plaintiff Bruce Fein is Master Trustee of the SFCT and CEO of the JSG.  He served as special assistant to the assistant attorney general for the office of legal counsel under President Nixon, associate deputy attorney general and general counsel of the Federal Communications Commission under President Reagan, counsel to the Joint Congressional Committee on Covert Arms Sales to Iran.  Among other things, Mr. Fein is author of *American Empire Before The Fall* and *Constitutional Peril: The Live and Death Struggle for Our Constitution and Democracy*.  Mr. Fein served as senior policy advisor to Republican Ron Paul's 2012 presidential campaign. Mr. Fein has testified on scores of occasions as an expert witness before Congress. He appears regularly on national and international television and radio. Mr. Fein is a United States citizen and resident of the District of Columbia.

8.  Defendant Jewish Chronicle Limited (JC) is an ultra-liberal online Jewish gossip sheet headquartered in London, UK.  It is readily available 24 hours a day throughout the United States via the internet.  JC is notorious for unreliable or defamatory publications. JC is a private corporation under UK law with a registered office address at Pearl Assurance House, 319 Ballards Lane, London N12 8LY.

9.  Among other things, JC has paid 30,000 UK pounds in libel damages and rendered an apology over false claims that Raphael Cohen had harbored two suicide bombers before they blew up a Tel Aviv bar.

10. The Independent Press Standards Organization (IPSO) in the UK found JC guilty in 2019 of publishing four articles riddled with multiple pejorative falsehoods about Aubrey White and her connections and interactions with the British Labor Party, including the untruth that she had been a member of the Socialist Party.

11. JC published articles on its website accusing Human Appeal International of donations supporting international terrorism, families of suicide bombers, and having been designated as a terrorist organization by the United States Government. (The U.S. State Department's designations of foreign terrorist organizations are online and were readily available to JC.

12. After the JC's false assertions, it confessed on its website:

> "We now accept that these allegations are untrue and apologized unreservedly to Human Appeal International and to those individuals involved in its operations. We have paid sums in damages to Dr. Othman Moqbel (the CEO of Human Appeal International) and to Dr. Hussein Nagi and Mr. Mohammed Yousef (both trustees of Human Appeal International) as an indication of our regret."

13. Defendant Jenni Frazer is a scandalmonger at JC.  On information and belief, Defendant Frazer accepts money or other things of value in exchange for writing defamatory articles.

## **STATEMENT OF FACTS**

14. On information and belief, many years ago, an exceptionally wealthy and politically engaged man (hereinafter "GS") commenced a vendetta against Plaintiffs David Sassoon and Sharon Levy, and the SFCT. Among other things, GS had defrauded David Sassoon's grandfather years earlier and feared Plaintiff Sassoon would seek redress.  Additionally, GS fervently opposed the Orthodox Judaism of Plaintiffs in favor of his own liberal ideology..

15. GS's vendetta included financial strangulation of Plaintiffs through illegal means and the manipulation of Defendants JC and Ms. Frazer through bribes to destroy Plaintiffs' reputations through defamatory publications.

16. On information and belief, GS bribed Defendants JC and Ms. Frazer to publish a June 3, 2021, online defamatory article authored by Defendant Frazer with the incendiary title, "**Exclusive:  After posing as a spy and fake skydiving with dog, conman threatens South Africa."**  The lead sentence with enlarged letters states, "An email to the South African leader Cyril Ramaphosa from an American equities giant has sent shockwaves across the Jewish world this week."  Below the lead sentence is a prominent picture of Plaintiff David Sassoon, making clear to an ordinary reader that he was the "conman" referenced in the article headline.  (The article may be found online at https://www.thejc.com/news/world/exclusive-after-posing-as-a-spy-and-fake-skydiving-with-dog-conman-threatens-south-africa-1.517389.).

17.  Among other things, the Defendants' June 3, 2021, article published five defamatory false statements of fact about Plaintiffs with actual malice, i.e., with knowledge of their falsity or with reckless disregard of whether they were true or not.

18. Malicious defamatory statement number one falsely stated that a recent email from Plaintiff David Sassoon to South African leader Cyril Ramaphosa relating to JSG investments in South Africa was deemed "obviously a fraud" by the South African Jewish Board of Deputies (hereinafter "False Statement Number One.").  In fact, Defendants JC and Frazer never communicated with the Board about the emails. The email was genuine, and Defendants knew it was genuine. Defendants' claim otherwise was sheer malicious invention to damage Plaintiff Sassoon's reputation as part of GS's criminal vendetta against him.

19. Malicious defamatory statement number two falsely asserted: "In April, the J. Sassoon Group took paid for promotional content in the Jerusalem Post and Haaretz

announcing the opening of its business in Israel" (hereinafter "False Statement Number Two"). In fact, neither JSG nor any other Plaintiff or person related to Plaintiffs paid money or anything of value to the Jerusalem Post and Haaretz for their positive stories about JSG and Plaintiffs. An ordinary reader would conclude from the defamatory falsehood that JSG or its owners Plaintiffs Bruce Fein, David Sassoon, or Sharon Levy had secretly bribed the Jerusalem Post and Haaretz to write favorable stories about them.

20. Malicious defamatory statement number three falsely asserts or insinuates that Plaintiffs JSG and David Sassoon met in September 2020 with an Emirates-based business person who allegedly voiced thanks to Defendant JC for writing articles about Plaintiff Sassoon that "saved him and his business partner from 'a world of pain'" as they made inquiries into Sassoon's activities (hereinafter "False Statement Number Three").  Neither JSG nor David Sassoon ever had an encounter with an Emirates-based business person, on or about September 2020, and has never asked such a person for investment or other funds whatsoever.  False Statement Number Three falsely accuses JSG and David Sassoon of chronic business fraud.

21. Malicious defamatory statement number four asserts that Plaintiff Sharon Levy has falsely represented herself is the chief compliance officer for JSG by stating that she is only the "apparent head of compliance" at JSG (hereinafter "False Statement Number Four").  False Statement Number Four untruthfully accuses Plaintiff Sharon Levy falsely representing her professional credentials and standing with JSG.

22. Malicious defamatory statement five falsely asserts that David Sassoon is a serial fraudster by maintaining that he is a "conman," "confidence trickster," "left a trail of

debts owed to former business associates in the U.S. and UK," and is a convicted

fraudster" (hereinafter "Defamatory Statement Number Five." Defamatory Statement

Number Five falsely accuses Plaintiff David Sassoon of chronic and incorrigible

fraudulent behavior. Defendants published Defamatory Statement Number Five with

knowledge of its falsity or with reckless disregard of whether it was true or not.

23. Defendants JC and Ms. Frazer sport sordid histories of gratuitously defaming

Plaintiff David Sassoon encouraged by GS bribes.

24. The JC in three prior articles authored by Jenni Frazer: "The fraudster who says he

was a spy," (December 16, 2016); "Rabbi officiated at fraudster's wedding in

Pentonville prison," (October 8, 2018); and, "Mystery deepens over identity of

'Jewish' fraudster married in jail by a rabbi," (December 13, 2018) were riddled with

malicious defamatory falsehoods attacking Plaintiff David Sassoon.

25. The three articles falsely assert or insinuate that David Sassoon is not an American

citizen who was born in Vermont in October 1973; that David Sassoon was born in

Egypt; that his authentic name is Khaled el-Sheriff; that Mr. Sassoon was born a

Muslim and is not Jewish; and, that he was involuntarily imprisoned in the United

States.

26. In fact, David Sassoon was born to a Jewish mother, who was also born to a Jewish

mother. In accordance with Halcha (Jewish law), these facts make David a Jew by

birth (Halachically Jewish). In addition, his Jewishness was confirmed by the Baith

Din in London, one of the most conservative and strictest rabbinical authorities in the

world. After an extensive and exhaustive investigation by Rabbi Schindler and

several interviews, where a Dian (Jewish Judge) participated in the process, David

Sassoon was determined to be Jewish.

27. The Baith Din uncovered documents and spoke to members of the Jewish Community

of Egypt and Syria where David's grandparents had resided to verify his Jewish roots.

28. David Sassoon has attended the Shul (Synagogue) in Leeds as well as in London

where he attended services at least once a day, every day. His observation, knowledge

of prayers in Hebrew, knowledge of customs and traditions that are unique to the

Aleppo community have been observed and confirmed as reflecting a practicing

member of the community.

29. David Sassoon's marriage was conducted under the auspices of the Baith Din.  That

would have been impossible if there were a crumb of suspicion about his Jewish

origins.

30. David Sassoon was born on October 6, 1973, in Vermont, United States of America.

31. A fraudulent Egyptian birth certificate posted on JC's website purports to show that

David Sassoon is Khalid El Shariff, born on September 25, 1973.

32. The earmarks of falsehood in that assertion abound. The Arabic name on the

certificate is not for Khalid El Shariff, or any variation. Plaintiff David Sassoon had

the document translated by an independent Arabic linguist whose background

included serving as a linguist and interpreter for the U.S. government. The birth

certificate bears the name "Khalid Abdulwahab Mohammed."

33. The birth certificate was computer generated. Egyptian authorities confirmed that

birth certificates of individuals born in 1973 are handwritten not computer generated.

In addition, the professed authentic birth certificate bears a National Insurance

Number.  But these numbers were not issued until 1995, over twenty years after

David Sassoon's birth. Additionally, the numbers are issued only to Egyptian citizens.

The birth certificate indicates the infant was born to an Egyptian mother and a non-

Egyptian father, and Egypt law requires an Egyptian father for citizenship.

34. The Egyptian Embassy in Washington, DC, confirmed that Khalid El Shariff is not an

Egyptian citizen. Sudanese authorities confirmed that David Sassoon is not a

Sudanese citizen.

35. Plaintiff David Sassoon's previous attorney in the UK challenged the Home Office to

bring him before the Sudanese Embassy to ascertain whether he is a citizen of Sudan

or not. The Home Office refused. The Home Office declined to make a case before a

British court for a Newton hearing to ascertain Mr. Sassoon's identity after he

challenged their claim that he was not David Sassoon.

36. Plaintiff David Sassoon was neither convicted of a crime nor arrested in the United

States.

37. All conditions precedent to this action have occurred or been performed.

**COUNT I-Defamation of Plaintiff David Sassoon-False Statement Number One**

38. Plaintiffs repeat and re-allege paragraphs 1-37 above, as if fully set forth herein.

39. Defendants' False Statement Number One was published with malicious ill-will

toward Plaintiff David Sassoon and with knowledge of its factual falsity or with

reckless disregard of whether it was true or not: namely, that that an email from

Plaintiff David Sassoon to South African leader Cyril Ramaphosa relating to JSG

investments in South Africa was deemed "obviously a fraud" by the South African

Jewish Board of Deputies.  In fact, Defendants JC and Frazer never communicated

9

with the Board about the emails. The email was genuine, and Defendants knew it was genuine.

40. Defendants' malicious, false, and defamatory statement about David Sassoon was published without privilege and disseminated to its audience in the United States and worldwide.

41. Defendants' false and defamatory statement that the South African Jewish Board of Deputies had declared Plaintiff Sassoon's email to Cyril Ramaphosa "obviously a fraud" is actionable as a matter of law irrespective of special harm.

42. Defendants' false and defamatory statement severely damaged Plaintiff David Sassoon in his business, profession, and personally as a defender of Israel and Judaism.

43. As a direct and proximate result of Defendants' publication of False Statement Number One, Plaintiff David Sassoon has suffered personal humiliation, mental anguish, and irreparable damage to his reputation as a businessman, professional, and advocate for Israel and Judaism, and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

44. Upon information and belief, Defendants' JC and Frazer worked hand in hand with GS and were financially rewarded by GS in publishing False Statement Number One with the aim of destroying Plaintiff David Sassoon finances, mental health, and ability to function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT 11-Defamation of JSG-False Statement Number Two**

45. Plaintiffs repeat and re-allege paragraphs 1-44 above, as if fully set forth herein.

46. Defendants' False Statement Number Two maliciously asserted the Plaintiff JSG had bribed respected Israeli media publication for positive news about them and its owners Plaintiffs Bruce Fein, Sharon Levy, and David Sassoon: "In April, the J. Sassoon Group took paid for promotional content in the Jerusalem Post and Haaretz announcing the opening of its business in Israel."

47. In fact, neither JSG nor any other Plaintiff or person related to Plaintiffs paid money or anything of value to the Jerusalem Post and Haaretz for their positive stories about JSG and other Plaintiffs. Defendants knew of the falsity of False Statement Number Two or acted with reckless disregard of whether it was true or not.

48. As a direct and proximate result of Defendants' publication of False Statement Number Two, Plaintiff JSG has suffered an irreparable loss of business reputation and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

49. Upon information and belief, Defendants' JC and Frazer worked hand in hand with GS and were financially rewarded by GS in publishing False Statement Number Two with the aim of destroying Plaintiff JSG's finances and ability to function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT 11I-Defamation of Bruce Fein-False Statement Number Two**

50. Plaintiffs repeat and re-allege paragraphs 1-49 above, as if fully set forth herein.

51. Defendants' False Statement Number Two maliciously asserted that Plaintiff Bruce Fein, an owner of JSG, had participated in bribing respected Israeli media publication for positive news about JSG and himself as CEO of JSG: "In April, the J. Sassoon

Group took paid for promotional content in the Jerusalem Post and Haaretz announcing the opening of its business in Israel."

52. In fact, neither Plaintiff Fein nor any other Plaintiff or person related to a Plaintiff paid money or anything of value to the Jerusalem Post and Haaretz for their positive stories about Bruce Fein, JSG and other Plaintiffs. Defendants knew of the falsity of False Statement Number Two or acted with reckless disregard of whether it was true or not.

53. As a direct and proximate result of Defendants' publication of False Statement Number Two, Plaintiff Bruce Fein has suffered an irreparable loss of business reputation and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

54. Upon information and belief, Defendants' JC and Frazer worked hand in hand with GS and were financially rewarded by GS in publishing False Statement Number Two with the aim of destroying Plaintiff Bruce Fein's finances and ability to function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT IV-Defamation of David Sassoon-False Statement Number Two**

55. Plaintiffs repeat and re-allege paragraphs 1-54 above, as if fully set forth herein.

56. Defendants' False Statement Number Two maliciously asserted that Plaintiff David Sassoon, an owner of JSG, had participated in bribing respected Israeli media publications for positive news about JSG and himself as Chairman of the Board of JSG: "In April, the J. Sassoon Group took paid for promotional content in the Jerusalem Post and Haaretz announcing the opening of its business in Israel."

57. In fact, neither Plaintiff Sassoon nor any other Plaintiff or person related to Plaintiffs paid money or anything of value to the Jerusalem Post and Haaretz for their positive stories about David Sassoon, JSG and other Plaintiffs. Defendants knew of the falsity of False Statement Number Two or acted with reckless disregard of whether it was true or not.

58. As a direct and proximate result of Defendants' publication of False Statement Number Two, Plaintiff David Sassoon has suffered an irreparable loss of business reputation and has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage in an amount to be determined at trial.

59. Upon information and belief, Defendants' JC and Frazer worked hand in hand with GS and were financially rewarded by GS in publishing False Statement Number Two with the aim of destroying Plaintiff David Sassoon's finances and ability to function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT V-Defamation of Sharon Levy-False Statement Number Two**

60. Plaintiffs repeat and re-allege paragraphs 1-59 above, as if fully set forth herein.

61. Defendants' False Statement Number Two maliciously asserted that Plaintiff Sharon Levy, an owner and officer of JSG, had participated in bribing respected Israeli media publications for positive news about JSG and herself and other Plaintiffs: "In April, the J. Sassoon Group took paid for promotional content in the Jerusalem Post and Haaretz announcing the opening of its business in Israel."

62. In fact, neither Plaintiff Levy nor any other Plaintiff or person related to Plaintiffs paid money or anything of value to the Jerusalem Post and Haaretz for their positive stories about Sharon Levy, JSG and other Plaintiffs. Defendants knew of the falsity of

False Statement Number Two or acted with reckless disregard of whether it was true
or not.

63. As a direct and proximate result of Defendants' publication of False Statement
Number Two, Plaintiff Sharon Levy has suffered an irreparable loss of business
reputation and has lost or will lose business opportunities and has suffered or will
suffer other pecuniary damage in an amount to be determined at trial.

64. Upon information and belief, Defendants' JC and Frazer worked hand in hand with
GS and were financially rewarded by GS in publishing False Statement Number Two
with the aim of destroying Plaintiff Sharon Levy's finances and ability to function as
a rival to GS, thereby justifying an award of punitive damages.

**COUNT VI-Defamation of David Sassoon-False Statement Number Three**

65. Plaintiffs repeat and re-allege paragraphs 1-64 above, as if fully set forth herein.

66. Defendants' False Statement Number Three maliciously asserted that Plaintiff David
Sassoon, an owner and Board Chairman of JSG, was complicit in serial business
fraud and that an Emirate business person had met with Plaintiff Sassoon and had
been saved from a financial shipwreck by reading Defendants' articles about Sassoon:
"Since the JC first revealed Sassoon's background in 2018, numerous people have
come forward to reveal their encounters with him. In September 2020, an Emirates-
based business person said that the JC reports had saved him and his business partner
from 'a world of pain' as they made inquiries into Sassoon's activities."

67. In fact, neither JSG nor David Sassoon ever had an encounter with an Emirates-based
business person, on or about September 2020, and have never asked such a person for

investment or other funds whatsoever.  Malicious defamatory statement number three

falsely accuses JSG and David Sassoon of serial business fraud.

68.  Defendants knew of the falsity of False Statement Number Three or acted with

reckless disregard of whether it was true or not.

69. As a direct and proximate result of Defendants' publication of False Statement

Number Thee, Plaintiff David Sassoon has suffered an irreparable loss of business

reputation and has suffered or will suffer a loss of business opportunities and has

suffered or will suffer other pecuniary damage in an amount to be determined at trial.

70. Upon information and belief, Defendants' JC and Frazer worked hand in hand with

GS and were financially rewarded by GS in publishing False Statement Number

Three with the aim of destroying Plaintiff David Sassoon's finances and ability to

function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT VII-Defamation of Sharon Levy-False Statement Number Four**

71. Plaintiffs repeat and re-allege paragraphs 1-70 above, as if fully set forth herein.

72. Defendants' False Statement Number Four maliciously asserted that Plaintiff Sharon

Levy fraudulently represented herself as JSG's chief compliance officer when in fact

she only "appeared" to occupy that position to inflate her professional credentials and

standing.

73. In fact, Sharon Levy is and always has been chief compliance officer with JSG.

74.  Defendants knew of the falsity of False Statement Number Four or acted with

reckless disregard of whether it was true or not.

75. As a direct and proximate result of Defendants' publication of False Statement

Number Four, Plaintiff Sharon Levy has suffered an irreparable loss of business

reputation and has suffered or will suffer a loss of business opportunities and has
suffered or will suffer other pecuniary damage in an amount to be determined at trial.

76. Upon information and belief, Defendants' JC and Frazer worked hand in hand with
GS and were financially rewarded by GS in publishing False Statement Number
Three with the aim of destroying Plaintiff David Sassoon's finances and ability to
function as a rival to GS, thereby justifying an award of punitive damages.

**COUNT VIII-Defamation of David Sassoon-False Statement Number Five**

77. Plaintiffs repeat and re-allege paragraphs 1-76 above, as if fully set forth herein.

78. Defendants' False Statement Number Five maliciously and falsely asserts has
engaged in serial financial fraud by maintaining that he is a "conman," "confidence
trickster," "left a trail of debts owed to former business associates in the U.S. and
UK," and is a convicted fraudster."

79. In fact, Plaintiff David Sassoon is not a "conman", is not a "confidence trickerster,"
has not left a trail of debts owed to former business associates in the U.S. and UK,
and has no history of committing fraud.

80.  Defendants knew of the falsity of False Statement Number Five or acted with
reckless disregard of whether it was true or not.

81. As a direct and proximate result of Defendants' publication of False Statement
Number Five, Plaintiff David Sassoon has suffered an irreparable loss of business
reputation and has suffered or will suffer a loss of business opportunities and has
suffered or will suffer other pecuniary damage in an amount to be determined at trial.

82. Upon information and belief, Defendants' JC and Frazer worked hand in hand with
GS and were financially rewarded by GS in publishing False Statement Number Five

83. with the aim of destroying Plaintiff David Sassoon's finances and ability to function as a rival to GS, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all counts jointly and severally as follows:

a) For general damages as to Counts I-VIII of not less than FIVE MILLION DOLLARS as to each count or such other amount to be proved at trial;

b) For special damages as to Counts I-VIII of not less than TWO MILLION FIVE HUNDRED THOUSAND DOLLARS as to each count or such other amount to be proved at trial;

c) For punitive damages in an amount to be proven at trial, but not less than ten times the amount of general and special damages as to each count, to punish and penalize Defendants and to deter repetition;

d) For an injunction requiring Defendants to remove all statements adjudicated defamatory in this case from any and all websites or other digital, social media, and hard copy platforms;

e) For an injunction requiring Defendants publish a retraction of the statements found defamatory including a retraction published in The New York Times, The Washington Post, The Wall Street Journal or comparable newspaper with nationwide distribution in the United States;

f) For attorneys' fees and costs incurred by Plaintiffs in this action; and,

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

17

Plaintiffs demand a jury trial of all issues so triable in this cause pursuant to Rule

38 of the Federal Rules of Civil Procedure.

Respectfully submitted this 9th day of July 2021.


*/s/Bruce Fein*
Bruce Fein (D.C. Bar No. 446615
Fein & Del Valle, PLLC
300 New Jersey Avenue, N.W., Suite 900
Washington, D.C. 20001
Phone:  202-465-8728
Email: bruce@feinpoints.com
Counsel for Plaintiffs